IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

KELLY HEIM,

           Plaintiff,

vs.

BNSF RAILWAY COMPANY,

           Defendant.

8:13CV369

**MEMORANDUM AND ORDER**

      The plaintiff has moved for an order requiring the defendant to produce "the discipline records for BNSF's employees who reported injuries, any FRSA complaints they filed, and information concerning the demerits BNSF gave him because he was injured." ([Filing No. 35, at CM/ECF p. 1](#)). As to the discipline records and FRSA complaints, the plaintiff requests this information for a six-year period and for the company's entire workforce (approximately 40,000 employees). The railroad has objected to the discovery demands as overbroad, encompassing irrelevant information, and demanding disclosure of private and confidential information for non-party employees. For the reasons discussed below, the plaintiff's motion to compel will be denied.

STATEMENT OF FACTS

    1.      <u>The Plaintiff's Complaint</u>.

      The plaintiff's complaint alleges Heim injured his foot on May 17, 2010, while performing track maintenance and repair for defendant BNSF. The plaintiff was transported to a hospital and admitted overnight. He alleges that while he was in the hospital and under the influence of narcotic pain medications, a railroad supervisor

required Heim to complete a BNSF personal injury report and directed Plaintiff on how to answer the questions. The plaintiff did so.

The plaintiff alleges that on May 25, 2010, BNSF initiated a disciplinary investigation charging Heim with failing to be alert and attentive and failing to comply with the instructions received at a morning safety meeting. After conducting the investigation, on September 14, 2010, BNSF imposed a thirty-day record suspension and placed Heim on probation for one year.

The plaintiff's complaint alleges he was disciplined for reporting a work-related injury in violation of the Federal Railroad Safety Act, 49 U.S.C. § 20109. Heim seeks compensatory damages for his lost income and emotional distress, punitive damages, and an award of litigation costs and attorney fees.

    2.    <u>The Discovery Dispute</u>.

The plaintiff moves for an order compelling the defendant to produce: 1) documents of all FRSA complaints filed by any BNSF employee from five prior to the date Plaintiff's complaint was filed to present, all findings on those complaints, and any documentation of how those complaints were resolved; 2) all documents which would serve as raw data to determine whether there is a correlation between being injured and being disciplined, including the discipline records for all BNSF employees who suffered an FRA-reportable injury from five years preceding the Complaint's filing to present; and 3) all documents "concerning 'points' assessed against employees for an injury." (Filing No. 35, at CM/ECF pp. 3-4).

According to the plaintiff's brief, the discovery at issue was requested in Plaintiff Interrogatory 9, and his Requests for Production 5 and 8.[1]

Interrogatory 9 and BNSF's responses thereto are as follows:

INTERROGATORY NO. 9: State the number of times, from five years preceding the Complaint's filing to present, BNSF has issued a notice of investigation to an employee, and for each notice, identify the person involved, the reason for the charge (i.e. "Alert and Attentive" and/or alleged "Carelessness"), and state:

- whether he or she was charged;
- whether a waiver of hearing was offered;
- whether a waiver of hearing was accepted;
- whether an investigatory hearing was held;
- whether the employee was found responsible for the violation;
- the nature of any discipline imposed; and
- whether an injury was involved.

OBJECTION: BNSF objects to this Interrogatory on the grounds it is vague in using the phrase "notice of investigation to an employee." BNSF further objects to this Interrogatory as overly broad and unduly burdensome in requesting a number of times BNSF has issued a "notice of investigation to an employee" from "five years preceding the Complaint's filing to present" as well as requesting detailed and specific information related to the "notice of investigation to an employee" from "five years preceding the Complaint's filing to present." BNSF further objects to this Interrogatory as it is not reasonably calculated to lead to the discovery of relevant and admissible evidence regarding the identification of the individual BNSF employees and specifics and related circumstances of BNSF employees' "notice of investigation" without a showing of substantial similarity to plaintiff regarding, but not limited to, the same alleged misconduct or that of comparable seriousness, the same supervisor, subjection to the same standards, and engagement in the same conduct without any mitigating or distinguishing circumstances. BNSF also objects to this Interrogatory as it seeks personal and confidential information regarding BNSF employees that are not a party to this lawsuit and therefore potentially invades the privacy interests of these employees.

---

[1] Although the defendant's brief mentions Production Request 6, the plaintiff's brief and motion do not. Therefore, this order does not address Production Request 6.

3

> SUPPLEMENTAL ANSWER AND OBJECTION: Without waiving any objection, see BNSF's Supplemental Objection and Response to Plaintiff's Request for Production No. 8.
>
> SECOND SUPPLEMENTAL ANSWER AND OBJECTION: Without waiving any objection, see BNSF's Second Supplemental Objection and Response to Plaintiff's Request for Production No. 8. Upon information and belief, BNSF states that on July 1, 2010, there were 683 BNSF Maintenance of Way employees working on the Powder River Division.

(Filing No. 40-8, at CM/ECF pp 1-2).

> Request for Production 5 and BNSF's responses thereto are as follows:
>
> REQUEST NO. 5: All documents, including but not limited to company policies, from five years preceding the Complaint's filing to present, that concern BNSF's employees filing injury reports. This includes, but is not limited to, personal injury reports; documents concerning "points" assessed against employees for an injury; witness statements; documents concerning injuries BNSF has reported to the Federal Railway Administration (including the associated causation codes); notices of discipline charges for notices that concern an incident that involved an injury; notices of investigation for notices that concern an incident that involved an injury; documents concerning adverse action taken for an incident that involved and injury; investigation transcripts for investigations that concern an incident that involved an injury; and letters of discipline, dismissals, exonerations, and/or other dispositions of claims (such as waivers) for a disposition that concerns an incident that involved an injury.
>
> OBJECTION AND RESPONSE: BNSF objects to this Request for Production as related to the incorrect contention and implication that BNSF "investigates" work-related injuries. BNSF only notices investigations to determine the facts and circumstances surrounding incidents as well as to investigate potential rules violations in accordance with the terms of the applicable Collective Bargaining Agreement between BNSF and the employees' union. BNSF further objects to the extent this Request for Production calls for conclusions, opinions and observations made during or as a result of investigations by BNSF claims personnel, officers and legal counsel on the basis of privileged attorney work-product, attorney-client communications, material prepared in the anticipation of litigation, and privileged reports pursuant to 49 U.S.C. § 20903, 49 U.S.C. § 20703, 49 C.F.R. § 229.7, and the self-critical analysis doctrine. BNSF objects to this Request for Production as it is not reasonably calculated to lead to the

discovery of relevant and admissible evidence. BNSF further objects to this Request for Production as overly broad and unduly burdensome in requesting "notices of discipline charges for notices that concern an incident that involved an injury; notices of investigation for notices that concern an incident that involved an injury; documents concerning adverse action taken for an incident that involved an injury; investigation transcripts for investigations that concern an incident that involved an injury; and letters of discipline, dismissals, exonerations, and/or other dispositions of claims (such as waivers) for a disposition that concerns an incident that involved an injury" for the "five years preceding the Complaint's filing to present." BNSF also objects to this Request for Production as it seeks personal and confidential information regarding BNSF employees that are a not party to this lawsuit and therefore potentially invades the privacy interests of these employees. Without waiving any objection, Plaintiff is referred to the documents produced in BNSF's Objection and Response to Request for Production No. 6.

(Filing No. 36-16, at CM/ECF pp. 3-5.

Request for Production 8 and BNSF's responses thereto are as follows:

REQUEST NO. 8: All documents, from five years preceding the Complaint's filing to present, that concern complaints, inquiries, investigations, lawsuits, administrative proceedings, or alternative dispute resolution proceedings concerning BNSF retaliating against its employees for reporting personal injuries.

OBJECTION: BNSF objects to this Request for Production as related to the incorrect contention and implication that BNSF "retaliat[es] against its employees for reporting personal injuries." BNSF objects to this Request for Production as overly broad and unduly burdensome in requesting "all documents, from five years preceding the Complaint's filing to present, that concern complaints, inquiries, investigations, lawsuits, administrative proceedings, or alternative dispute resolution proceedings concerning BNSF retaliating against its employees for reporting personal injuries." BNSF objects to this Request for Production to the extent it seeks attorney-client communications and privileged attorney work product. BNSF also objects to this Request for Production as it seeks personal and confidential information regarding employees that are not a party to this lawsuit and therefore potentially invades the privacy interests of these employees. BNSF further objects to this Request for Production as not reasonably calculated to lead to the discovery of relevant and admissible evidence.

> SUPPLEMENTAL OBJECTION AND RESPONSE: Without waiving any objection, BNSF produces the employee transcripts of BNSF Maintenance of Way employees on the Powder River Subdivision who were charged with rules violations in 2010 and BNSF produces the correspondence to such employees documenting the rules violated and subsequent discipline [BNSF00862 - BNSF00916].
>
> SECOND SUPPLEMENTAL OBJECTION AND RESPONSE: Without waiving any objection, BNSF produces a list of BNSF Maintenance of Way employees working on the Powder River Division who suffered FRA reportable injuries in 2010 [BNSF00924]. BNSF also produces the OSHA Findings regarding the only other BNSF Maintenance of Way employee working on the Powder River Division in 2010 that suffered a FRA reportable injury and filed a Complaint against BNSF for alleged retaliation [BNSF00920 - BNSF00923].

(Filing No. 40-9, at CM/ECF pp. 2-3).

BNSF has provided a partial response to the disputed discovery. It produced a chart listing whether discipline was imposed on the twenty-one employees (from a total of 683 employees) who had FRA-reportable injuries on the Powder River Division in 2010, but it did not produce those employee's discipline histories. It also produced OSHA's findings for the one employee who worked in the Powder River Division and filed an FRSA complaint in 2010, but it did not produce the OSHA complaint. (Filing No. 36, at CM/ECF p. 1, ¶ 5). BNSF's production did not include the names of the non-party employees referenced in the records. (Filing No. 43-1).

The plaintiff claims BNSF's document production is insufficient because "683 employees is not a large [enough] population to determine a statistically significant number (without using an unacceptably high confidence interval)." (Filing No. 40-10). The plaintiff demanded nationwide information, but the railroad refused to further supplement its discovery responses. (Filing No. 40-10). As threatened, the plaintiff filed his motion to compel. (Filing No. 34).

6

The plaintiff demands production, on a company-wide basis, of the discipline history for every BNSF employee who reported a personal injury from December 2008 (five years before Heim's complaint was filed) to the present, along with any FRSA complaints and related information for any of those employees. Burlington Northern employs 40,000 people at locations in 28 states of the United States, and in Canada and Mexico.

LEGAL ANALYSIS

1. The Obligation to Meet and Confer.

The threshold issue is whether the parties engaged in a good faith effort to resolve their discovery dispute before the plaintiff's motion to compel was filed. The plaintiff, as the moving party, was obligated to make this showing when he filed his motion to compel.

> A motion to compel discovery "*must* include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." Fed.R.Civ.P. 37(a)(1) (emphasis supplied). And NECivR 7.1(i) provides that "[t]o curtail undue delay in the administration of justice, this court only considers a discovery motion in which the moving party, in the written motion, shows that after personal consultation with opposing parties and sincere attempts to resolve differences, the parties cannot reach an accord.

S.E.C. v. Behrens, 2013 WL 4121082, 2 (D. Neb. 2013)(Gerrard, J., presiding) (emphasis in original). As defined in this court's local rules:

> "Personal consultation" means person-to-person conversation, either in person or on the telephone. An exchange of letters, faxes, voice mail messages, or emails is also personal consultation for purposes of this rule upon a showing that person-to-person conversation was attempted by the moving party and thwarted by the nonmoving party.

NECivR 7.1(i).

7

The plaintiff's motion, supporting evidence, and brief contain no meet and confer certification. For that reason alone, the court could summarily deny Plaintiff's motion.

Setting aside the lack of a formal certification, the evidence filed by the parties indicates the parties' counsel communicated about discovery disputes and exchanged emails summarizing their telephonic and written discussions. But that same evidence reveals no discussions about Production Request 5. (Filing No. 36-7 through 36-14). And as to Heim's demand for production of his PPI detail, which could liberally be construed as a part of Production Request 5, the evidence is clear: Heim demanded the record by email and the railroad did not respond to that email.[2] NECivR 7.1(i); Filing Nos. 36, at CM/ECF p. 1, ¶ 6; 40-10; 43-5 (referring to a Wisconsin BNSF employee). This is insufficient to satisfy the meet and confer requirements under even if the court were to apply a standard less rigorous than requiring a formal certification.

As to Plaintiff's Request for Production of Documents No. 5, and his demand for a copy of his PPI detail, the plaintiff has failed to meet his burden of showing he made "sincere attempts" through "personal consultation" to obtain the disputed discovery. See, e.g., Wang v. Nebraska Public Power Dist., 2014 WL 5431334, 2 (D. Neb. 2014).

---

[2] In response to the railroad's claim that Plaintiff failed to comply with the threshold "meet and confer" requirements, a legal assistant for plaintiff's counsel submitted an affidavit stating:

> I called the clerk's office prior to filing Plaintiff's Motion to Compel in October 23, 2014 to confirm we were filing all the documents required for a motion to compel. I described each document and the order in which I was going to file it to the clerk. I specifically told the clerk that within the declaration was an index of exhibits with a description of the documents. The clerk said that everything was correct and to go ahead and file it.

(Filing No. 44). The clerk's office of this court will, if asked, the mechanics for filing documents on CM/ECF. But lawyers practicing in this court are responsible for reading the court's local rules and insuring that the content of the filed documents complies with those rules. Simply stated, the clerk's office does not give legal advice and should not be asked to.

The plaintiff's motion to compel the railroad's response to Request 5, and to compel production of the plaintiff's PPI detail, will be denied.

The evidence of record indicates the parties did discuss Interrogatory 9 and Production Request 8 before the motion to compel was filed. While no meet and confer "certification" exists, after reading the parties' arguments and researching the issues, the court is convinced additional discussions between the parties would not resolve the discovery dispute. So as applied to Interrogatory 9 and Production Request 8, the court will address the merits of the plaintiff's motion to compel.

    2.    <u>Interrogatory 9 and Production Request 8</u>.

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense—including the existence, description, nature, custody, condition, and location of any documents. . . ." Fed.R.Civ.P. 26(b)(1). "Broad discovery is an important tool for the litigant, and so '[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.' " WWP, Inc. v. Wounded Warriors Family Support, Inc., 628 F.3d 1032, 1039 (8th Cir. 2011) (quoting Fed.R.Civ.P. 26(b)(1)).

However, the district court may, in its discretion, limit the scope of discovery. (Credit Lyonnais v. SGC Int'l, Inc., 160 F.3d 428, 431 (8th Cir.1998)). And under Rule 26(c)(2)(C):

> [T]he court <u>must</u> limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that:
>
>  (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;

> (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or
>
> (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

Fed.R.Civ.P. 26(c)(2)(C) (emphasis added).

      a.      Relevance.

To determine if a matter is discoverable, the court must first decide whether the requested discovery is relevant to a claim or defense. The party requesting discovery must present a threshold showing of relevance before parties are required to "open wide the doors of discovery" and "produce a variety of information which does not reasonably bear upon the issues in the case." Hofer v. Mack Trucks, Inc., 981 F.2d 377, 380 (8th Cir.1992). Discovery requests are considered relevant if there is any possibility that the information sought is relevant to any issue in the case. But mere speculation that information might be useful will not suffice; litigants seeking to compel discovery must describe with a reasonable degree of specificity, the information they hope to obtain and its importance to their case. See Cervantes v. Time, Inc., 464 F.2d 986, 994 (8th Cir.1972). "While the standard of relevance in the context of discovery is broader than in the context of admissibility, . . . this often intoned legal tenet should not be misapplied so as to allow fishing expeditions in discovery." Hofer, 981 F.2d at 380.

The plaintiff claims he needs the discipline histories and FRSA complaints of all other BNSF employees who had an FRA-reportable injury from five years prior to filing his complaint to present, any findings on those disciplinary matters and complaints, and all documentation of how they were resolved to determine whether, on a company-wide basis, there is a correlation between being injured and being disciplined. (Filing No. 35,

10

at CM/ECF p. 3). He claims a statistical analysis of this raw data is necessary and relevant because "BNSF's retaliatory motive can be inferred from differences in treatment, i.e., from data showing that BNSF's pattern or practice is to retaliate against employees for reporting injuries." (Filing No. 35, at CM/ECF p. 6). The plaintiff claims BNSF's production of all FRSA-complaints or discipline histories from 2010 for employees working in only the Powder River Division is insufficient because it represents only 1% of BNSF's workforce. Plaintiff claims he cannot use this limited information to "perform any meaningful statistical comparisons or calculations," which is "particularly unjustifiable given BNSF's systematic and longstanding practice of retaliating against injured workers." (Filing No. 35, at CM/ECF p. 8).

The railroad argues Plaintiff's request for companywide documents encompasses irrelevant information because the request is not limited to the timeframe, geographic location, decision-maker, work being performed, or collective bargaining agreement applicable to Heim's employment, accident, and discipline. (Filing No. 39, at CM/ECF p. 18).

As stated by the Eighth Circuit, company-wide statistics are usually not helpful in employment cases because those who make employment decisions vary across divisions. Carman v. McDonnell Douglas Corp., 114 F.3d 790, 792 (8th Cir. 1997). Courts therefore limit the discovery of company records "to the local facility where plaintiff was employed, where there is no showing of the need for regional or nationwide discovery. Sallis v. University of Minn., 408 F.3d 470, 478 (8th Cir. 2005). This showing of need is not met by merely claiming an adverse employment action arose from a company's nationwide policy or its interpretation. Semple v. Federal Exp. Corp., 566 F.3d 788, 794 (8th Cir. 2009).

11

In Semple, a Federal Express employee claimed he was wrongfully terminated and requested company-wide discovery to examine how Federal Express interpreted and applied a section of its employment manual at all of its branches. Federal Express objected to the scope of this request, but furnished the materials from the district were the plaintiff was employed. Upon consideration, the district court sustained the company's objection, thereby limiting Plaintiff's discovery to records and information from the local district. Affirming the district court's ruling, the Eighth Circuit held:

> District court decisions limiting discovery are reviewed for abuse of discretion. . . . Generally, a plaintiff in a wrongful termination case is not entitled to company-wide discovery absent a showing of a particular need for the requested information. . . . Here, Semple cannot establish a particular need for the materials requested throughout Federal Express. . . . . There are no facts in the current case indicating that Federal Express's management beyond the Northland District was involved in Semple's termination beyond review through the company's internal appeals process. The fact that this policy applied nationally has little bearing on its application by local management within the Northland District, and as a result, Semple is unable to establish a particular need for his broad discovery request. Thus, the district court did not abuse its discretion in denying Semple company-wide discovery.

Semple v. Federal Exp. Corp., 566 F.3d 788, 794 (8th Cir. 2009). See also, Dahl v. Wells Fargo Advisors, LLC, 2012 WL 124986, 2 (D. Minn. 2012) (denying nationwide discovery in an employment discrimination case); Heller v. HRB Tax Group, Inc., 287 F.R.D. 483, 486 (E.D.Mo. 2012) (holding nationwide discovery was not allowed in a putative class action case where the complaint did not allege that defendant's advertising method was national in scope).[3]

---

[3] Contrary to the argument advanced in the plaintiff's brief, the plaintiff's complaint does not assert the alleged retaliation against the plaintiff "was pursuant to BNSF's companywide policies." (Filing No. 35, at CM/ECF p. 2).

Based on the allegations within the plaintiff's complaint and the evidence of record, the plaintiff was directed to complete a personal injury report by a roadmaster from the Powder River Division. And he was charged locally, his hearing on those charges was held locally, and his discipline was based on findings made at a local level. (Filing No. 36-1, at CM/ECF p. 4; 36-3; 40-2, at CM/ECF pp. 27, 32). Under such facts and the prevailing Eighth Circuit law, Heim has failed to show any particular need to conduct discovery concerning whether, on a company-wide basis, other injured BNSF employees faced disciplinary charges for reporting a personal injury.

      b.      Overbroad, Unduly Burdensome.

Even if the court assumes the plaintiff made a threshold showing of relevance, the court must then decide whether the discovery requests are overly broad and unduly burdensome. The railroad claims Interrogatory 9 and Production Request 8 are overbroad on their face. "A party resisting facially overbroad or unduly burdensome discovery need not provide specific, detailed support" to raise and stand on its objections. Madden v. Antonov, 2014 WL 4295288, 3 (D. Neb. 2014); Carlton v. Union Pacific R. Co., 2006 WL 2220977, 5 (D. Neb. 2006) (citing Contracom Commodity Trading Co. v. Seaboard, 189 F.R.D. 655, 665 (D. Kan.1999)).

Interrogatory 9 asks BNSF to state the number of times over the last six years, companywide, that BNSF issued a notice of investigation to an employee, and for each notice, to identify the employee involved and provide data concerning whether a waiver was offered and/or accepted, whether an investigation was held, the outcome of the investigation, the type of discipline imposed, and "whether an injury was involved." (Filing No. 40-8, at CM/ECF pp 1-2). Request 8 demands production of all documents, companywide for the last six years, that "concern complaints, inquiries, investigations, lawsuits, administrative proceedings, or alternative dispute resolution proceedings

concerning BNSF retaliating against its employees for reporting personal injuries." (Filing No. 40-9, at CM/ECF pp. 2-3). The breadth of these discovery requests is both obvious and excessive on its face.

The plaintiff argues that "BNSF maintains these documents in the ordinary course of business." (Filing No. 35, at CM/ECF p. 3). But the mere existence of the documents does not render the requested discovery reasonable, easily produced, and available to the plaintiff upon demand. Moreover,

> [E]ven where company records are shown to be relevant, Courts have been reluctant to permit discovery, when the requested disclosures would intrude upon the privacy interests of other, non-party employees. . . . [T]he personnel files of an entire class of employees should not be produced, even in an employment discrimination proceeding, absent a compelling showing of relevance. . . . As a consequence, a party seeking the discovery of personnel information must demonstrate, notwithstanding the breadth of discovery, that the value of the information sought would outweigh the privacy interests of the affected individuals.

Onwuka v. Federal Express Corp., 178 F.R.D. 508, 517 (D. Minn. 1997). See also Shakman v. City of Chicago, 2014 WL 711010, 4 (N.D. Ill. 2014) (holding employees have a recognized interest in keeping their personal information from personnel files out of the public domain). "In the ordinary workplace setting, an employee has a privacy interest in her employment records, and disciplinary actions generally are not public." Shakman, 2014 WL 711010, at *4.

Rather than merely stand on its objections, BNSF has already produced a chart listing whether discipline was imposed on the 21 employees with FRA-reportable injuries in BNSF's Powder River Division for 2010, and the OSHA's findings for the one employee from that division who filed an FRSA complaint in 2010. (Filing No. 36, at CM/ECF p. 1, ¶ 5). This attempted compromise, made during discovery discussions, did

14

not waive the railroad's objection to the plaintiff's discovery requests as facially overbroad.

The plaintiff argues the defendant's response, as unilaterally narrowed by the railroad to a single division and a single year, is insufficient. (Filing No. 35, at CM/ECF p. 3). The plaintiff may be asking the court to grant at least a portion of his motion and, by re-crafting the discovery, order the railroad to produce additional information. Under the circumstances presented, the court will not do so.

It is the parties' obligation to draft, serve, and respond to discovery. And before a motion to compel is filed, the parties must exhaust all reasonable attempts to resolve the discovery dispute without court intervention. If, even after the meet and confer process, a party files a motion demanding answers to patently overbroad discovery, court orders which re-draft and narrow the discovery provide no incentive to draft targeted discovery at the outset, or to engage is good faith discussions to resolve discovery disputes.

Accordingly,

IT IS ORDERED that the plaintiff's motion to compel, (Filing No. 34), is denied.

Dated this 9th day of December, 2014

BY THE COURT:

*s/ Cheryl R. Zwart*
United States Magistrate Judge

*This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.