IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| KELLY HEIM, | |
| Plaintiff, | 8:13-CV-369 |
| vs. | |
| BNSF RAILWAY COMPANY, | MEMORANDUM AND ORDER |
| Defendant. | |

    The plaintiff in this case, Kelly Heim, alleges that the defendant, BNSF Railway Company, discriminated against him in violation of the Federal Railroad Safety Act ("FRSA"), 29 U.S.C. § 20101 *et seq.*, by disciplining him for reporting his work-related injury. Heim and BNSF have cross-moved for summary judgment. For the reasons that follow, Heim's motion for partial summary judgment (filing 73) will be denied and BNSF's motion for summary judgment (filing 97) will be granted.

## BACKGROUND[1]

    At the time of the injury Heim was a laborer on a BNSF crew working in the general vicinity of Douglas, Wyoming. Filing 95-2 at 16. The project

---

[1] Pursuant to NECivR 56.1, a party moving for summary judgment must include in its brief a statement of material facts about which the movant contends there is no dispute, and the party opposing summary judgment must include in its brief a concise response to that statement of facts, noting any disagreement.

The purpose of Rule 56.1 is, obviously, for the parties to assist the Court by allowing the Court to identify, and focus its attention on, the parties' genuine disagreements. But the Court was frustrated in this case by BNSF's approach to the rule. Instead of identifying genuine disputes of fact, BNSF chose to dispute nearly every fact asserted by Heim, usually raising spurious evidentiary or semantic complaints instead of anything substantive. For instance, Heim asserted that "[t]he rail was lying flat and not moving" before he stepped over it. Filing 74 at 3. There is, in fact, no evidence to the contrary. BNSF dedicates a half-page to disputing this sentence, mostly complaining that it is vague, indefinite, and irrelevant. Filing 94 at 7. But nothing in that half-page *actually* disputes the fact asserted. And that is just one example; it goes on for 29 pages.

The end result of BNSF's obfuscation was a remarkable waste of everyone's time, particularly the Court's. Nor does the result of the case validate BNSF's tactics: the merits of this dispute, which favored BNSF, were harder for the Court to evaluate than they should have been precisely because they were obscured by immaterial factual squabbling.

Heim was working on was "rail seat abrasion," which involves replacing the material underneath the rail: the pads, insulators, and clips. Filing 76-1 at 4. The rail is removed, the worn material is replaced, and then the rail is put back into place. Filing 76-1 at 4. This requires de-clipping the rail from the bed and swinging the rail into the middle of the track. Filing 76-3 at 2. But while the rail is detached from the rail bed, it is still under tension from either direction, and can jump or roll unpredictably. Filing 76-1 at 4. And the rail had been rolling frequently on the day of the accident, because the crew was working on a sharp curve. Filing 76-2 at 24.

Heim's responsibility that day was to pick up metal and other scraps along the track. Filing 76-3 at 2. Heim was collecting material about 600 feet from the end of the project. Filing 76-3 at 2. He saw a clip in the middle of the track on the high side of the detached rail, between the detached rail and the still-affixed rail. Filing 76-3 at 2. He looked to see how close the nearest machines were, and thought it was safe to step over the rail to collect the stray clip. Filing 76-3 at 2. But when he did, the detached rail jumped and landed on top of his left foot, injuring his foot and pinning him in place. Filing 76-3 at 2.

Heim got the attention of a co-worker who summoned assistance, but it took about 30 minutes to finally lift the rail enough to free Heim's foot. Filing 76-3 at 3. Heim was transported to the hospital by his supervisor in a company pickup truck. Filing 76-3 at 3. Heim had fractured bones in his foot. Filing 76-3 at 3. While he was in the hospital, Heim completed a BNSF injury report form (filing 76-4) regarding the incident and his broken bones, although the parties dispute the circumstances under which Heim filled out the form. (Heim says he filled out the form unwillingly, under pressure and with coaching from his supervisor; his supervisor denies pressuring him and claims that Heim said he was all right to fill out the form. *Compare* filing 76-3 at 4 *with* filing 95-4 at 3-4.)

Just over a week later BNSF sent Heim a letter (filing 76-1) notifying him of an investigation into Heim's "alleged failure to comply with instructions given at the morning briefing" and "failure to be alert & attentive" when he placed his foot "in harms [sic] way between the loose rail and fixed rail resulting in injury to [his] left foot when the rail rolled. . . ." Filing 76-1 at 2. At the hearing, Heim's supervisor said that "as a rule we don't scrap between a loose rail and a fixed rail." Filing 76-2 at 14. Instead, Heim should have been collecting material from the low side of the detached rail. Filing 76-2 at 14. Heim's supervisor also said that "tipping rail" had been discussed several times at the morning job briefings. Filing 76-2 at 16-17.

Heim was eventually found to have violated safety rules generally requiring employees to take a safe course, be alert and attentive to avoid

- 2 -

injury, and be alert to walkway conditions. Filing 76-8; filing 76-10; filing 76-11. Heim was assessed a "Level S 30 Day Record Suspension" and an associated one-year review period, during which another violation could have had more serious consequences. Filing 76-8; filing 76-9 at 4. But a "record suspension" is recorded on an employee's personal record, not actually served. Filing 76-9 at 4. Heim completed the review period without incident, and his pay and benefits were unaffected. Filing 95-2 at 31.

## STANDARD OF REVIEW

Summary judgment is proper if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). The movant bears the initial responsibility of informing the Court of the basis for the motion, and must identify those portions of the record which the movant believes demonstrate the absence of a genuine issue of material fact. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). If the movant does so, the nonmovant must respond by submitting evidentiary materials that set out specific facts showing that there is a genuine issue for trial. *Id.*

On a motion for summary judgment, facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts. *Id.* Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the evidence are jury functions, not those of a judge. *Id.* But the nonmovant must do more than simply show that there is some metaphysical doubt as to the material facts. *Id.* In order to show that disputed facts are material, the party opposing summary judgment must cite to the relevant substantive law in identifying facts that might affect the outcome of the suit. *Quinn v. St. Louis County*, 653 F.3d 745, 751 (8th Cir. 2011). The mere existence of a scintilla of evidence in support of the nonmovant's position will be insufficient; there must be evidence on which the jury could conceivably find for the nonmovant. *Barber v. C1 Truck Driver Training, LLC*, 656 F.3d 782, 791-92 (8th Cir. 2011). Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. *Torgerson*, 643 F.3d at 1042.

## DISCUSSION

The purpose of the FRSA is to "promote safety in every area of railroad operations and reduce railroad-related accidents and incidents." 49 U.S.C. § 20101; *see CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 661-62 (1993). As relevant, the FRSA provides that a railroad "may not discharge, demote, suspend, reprimand, or in any other way discriminate against an employee" if that discrimination is based on the employee's attempt "to notify, or attempt

to notify, the railroad carrier or the Secretary of Transportation of a work-related personal injury or work-related illness of an employee." 49 U.S.C. § 20109(a)(4). FRSA's implementing regulations further provide that to "discriminate" against an employee includes, but is not limited to, "intimidating, threatening, restraining, coercing, blacklisting, or disciplining an employee." 29 C.F.R. § 1982.102(b)(1)(iv). An employee may obtain *de novo* review of a retaliation claim in federal court after exhausting administrative remedies. 49 U.S.C. § 20109(d)(3).

Heim's prima facie case requires him to show (i) he engaged in a protected activity; (ii) the defendant knew or suspected, actually or constructively, that he engaged in the protected activity; (iii) he suffered an adverse action; and (iv) the circumstances raise an inference that the protected activity was a contributing factor in the adverse action. *Kuduk v. BNSF Ry. Co.*, 768 F.3d 786, 789 (8th Cir. 2014) (citing 49 U.S.C. § 42121(b)(2)(B)(i); 29 C.F.R. § 1982.104(e)(2)). If he makes this showing, BNSF is nonetheless not liable if it demonstrates, by clear and convincing evidence, that it would have taken the same unfavorable personnel action in the absence of his protected activity. *Id.* (citing 49 U.S.C. § 42121(b)(2)(B)(ii)).

In this case, there is no dispute that Heim engaged in a protected activity, and that BNSF knew about it: he reported his work-related personal injury to BNSF. The parties disagree about the other two elements of the prima facie case: BNSF contends that Heim did not suffer an adverse action, and that the circumstances do not support an inference that his injury report was a contributing factor to whatever adverse action he might have suffered. As suggested above, the FRSA sets a very low bar for "adverse" action, and it includes a "reprimand" or "disciplining" an employee. *See*, 29 U.S.C. § 20109(a)(4); 29 C.F.R. § 1982.102(b)(1)(iv). Heim suffered little in the way of real consequences from the investigation into his accident; however, to characterize it as a "reprimand" or "disciplining" would not seem inaccurate. *See Blackorby v. BNSF Ry. Co.*, No. 13-CV-908, 2015 WL 58601, at *3 (W.D. Mo. Jan. 5, 2015). But the Court need not ultimately decide that question because the Court finds that the circumstances do not support an inference that Heim was disciplined for reporting his injury.

The Eighth Circuit has explained that the essence of the intentional tort of FRSA retaliation is discriminatory animus. *Id.* at 791. Under the statute's "contributing factor" causation standard, a prima facie case does not require that the employee conclusively demonstrate the employer's retaliatory motive. *Id.* A contributing factor is any factor which, alone or in connection with other factors, tends to affect in any way the outcome of the decision. *Id.* But the contributing factor that an employee must prove is

- 4 -

intentional retaliation prompted by the employee engaging in protected activity. *Id.*

Heim's argument, reduced to its essence, is that the injury report was a contributing factor to his discipline because it was a but-for cause of the investigation and sanction. Filing 103 at 32. Employees commonly step near loose rails, Heim contends, and BNSF cannot identify anyone else who was disciplined for it. Filing 103 at 32-33. And Heim argues that BNSF learned he had stepped between a loose and fixed rail from his injury report. Filing 103 at 34. Ergo, Heim concludes, "BNSF would not have disciplined Heim had he not been injured." Filing 103 at 35.

And that much may be true, but that is not what the FRSA requires a plaintiff to show. The FRSA protects reporting an injury because it encourages safety to do so: it prevents railroads from covering up safety hazards by underreporting any resulting injuries. It would be peculiar indeed if the FRSA also protected employees from being disciplined for conduct actually resulting in an injury. Or, more to the point: *reporting* an injury is protected activity under 49 U.S.C. § 20109, but *actually being injured* is not protected.

Under Heim's reading of the FRSA, he could tie himself to the railroad tracks like a damsel in distress in a silent film melodrama, and then avoid punishment if injured as a result simply by completing an injury report confessing his behavior. But the Court cannot accept the implication that an injury report is a "contributing factor" to an adverse action simply because it is part of the administrative process which resulted in discipline. And the Eighth Circuit made clear, in *Kuduk*, that an inference of intentional retaliatory animus is required. 768 F.3d at 791-92. Heim's attempt to rely on but-for causation is insufficient.

For that matter, it is not entirely clear to the Court that Heim's injury report—that is, the form that he completed—was a cause of anything. Heim reported the incident, as a practical matter, when he yelled for help while he was trapped under a rail. The circumstances, in fact, undercut any inference of retaliation for reporting an injury at practically every turn. It would make little sense to retaliate against an employee for "reporting an injury" that was evident to the railroad from nearly the moment it occurred. And it was Heim's supervisor who asked him to complete the official report form. In fact, Heim claims that he was pressured to do so, which begs the question: why would BNSF work to get Heim to make a report and then retaliate against him for making it?

Heim's answer seems to be that he was *really* disciplined because he was injured. That, as noted above, is not protected activity under the FRSA. Nor is it particularly surprising. Think of all the negligent driving that

happens every day, unnoticed by authorities, because no accident resulted. Only when a negligent driver is unlucky enough to cause an accident is a citation likely to be issued. Heim's act of stepping between the rails would, the Court agrees, have gone unsanctioned had he not been injured—most likely because it would have gone unnoticed. And the Court sees no basis, in the FRSA or sensible public policy, to say that a railroad cannot take a violation of safety rules, even a common one, more seriously in the instances in which an injury results. Heim's evidence that no other employees were disciplined for similar conduct therefore fails to prove any kind of retaliatory animus against him: he has failed to identify a similarly situated employee who was treated differently, that is, an employee who did the same thing and was injured, but who was not disciplined as a result. *See*, *Jauhola v. Wisconsin Cent., Ltd.*, No. 14-CV-1433, 2015 WL 4992392, at *6 (D. Minn. Aug. 20, 2015); *Gunderson v. BNSF Ry. Co.*, No. 14-CV-223, 2015 WL 4545390, at *13 (D. Minn. July 28, 2015); *Loos v. BNSF Ry. Co.*, No. 13-CV-3373, 2015 WL 3970169, at *6 (D. Minn. June 30, 2015).

Heim also complains about the investigation, and how vague the rules are that he was found to have violated. He complains that no rule *expressly* prohibits stepping between loose and fixed rails. Filing 103 at 36-38. But that is essentially a challenge to BNSF's application of its own rules, and the Eighth Circuit has explained that federal courts do not sit as a super-personnel department that re-examines an employer's disciplinary decisions. *Kuduk*, 768 F.3d at 792. In the absence of evidence suggesting that retaliation for reporting an injury was a contributing factor to his discipline, Heim is not entitled to relief, even if BNSF's disciplinary decision was inaccurate. *Id.*; *see*, *Jauhola v. Wisconsin Cent., Ltd.*, 2015 WL 4992392, at *7; *Gunderson*, 2015 WL 4545390, at *12.

IT IS ORDERED:

1. Heim's motion for partial summary judgment (filing 73) is denied.

2. BNSF's motion for summary judgment (filing 97) is granted.

3. A separate judgment will be entered.

Dated this 30th day of September, 2015.

BY THE COURT:

John M. Gerrard
United States District Judge